OPINION OF THE COURT
Howard Miller, J.
This CPLR article 78 proceeding having come on before me for hearing on July 13, 1995, and the parties having presented *153 their respective proofs, and after due deliberation and consideration of the posttrial memoranda of law, I decide and find as follows.
Petitioner commenced employment with the Rockland County Sheriffs Department as a correction officer in 1988. On November 10, 1994, apparently at the suggestion of officials at the Rockland County Jail, petitioner was seen by Robert N. Sobel, M.D., Chief of Psychiatry at the Rockland Psychiatric Center. Dr. Sobel’s psychiatric evaluation as reflected in the center’s records indicates a diagnosis of "adjustment disorder with mixed mood-anger, depression”, and among other suggestions for treatment was "encourage leave of absence from work”. On November 17, 1994, Dr. Sobel and Joseph Baecher, CSW, jointly directed a letter to Chief Nicholas Solfaro, the superintendent of the jail, stating that "In our professional opinion and based on our evaluation, Richard Fasanaro should be placed on medical leave for the next four weeks due to job related stress. Patient will continue in treatment with us at this facility.”
Petitioner did continue to treat at the center, and the center’s record is replete with references to petitioner’s difficulty in controlling his anger and temper, and "job problem” is noted as a psychosocial stressor. There are references to a connection between childhood issues and petitioner’s anger, as well as a note that when petitioner worked in a pizza shop, he could "take a walk and cool down when angry”, while he could not do so when at the jail.
Prior to the receipt of the November 17, 1994 letter, Chief Solfaro had received notes from the Employee Assistance Program stating that petitioner was suffering from "job-related stress”. Nevertheless, Sheriff James Kralik made a preliminary determination that petitioner was not suffering from a job-related illness and directed that petitioner submit to a medical examination to determine his fitness to resume his duties.
In February of 1995, petitioner was examined by Allan J. Tuckman, M.D., with respect to the issue of petitioner’s mental state and his fitness to perform the duties of his position as correction officer. In a report dated February 13, 1995, Dr. Tuckman stated that petitioner had a serious mental disorder requiring ongoing psychiatric treatment, and found that petitioner was not capable at that point of returning to duty. It *154 was Dr. Tuckman’s opinion that petitioner was being "overwhelmed by the pressures imposed upon him working in a correctional facility”, as a result of which petitioner’s "capacity to control his impulses and work productively has been markedly impaired”. Dr. Tuckman’s letter indicated that petitioner had not consented to the release of his Rockland Psychiatric Center records for Dr. Tuckman’s review.
Sheriff Kralik considered Dr. Tuckman’s report, and particularly petitioner’s refusal to release the center’s records to Dr. Tuckman, as evidence that petitioner’s illness was not job related. Petitioner commenced this proceeding and on March 1, 1995, an order was issued granting petitioner’s application to annul the determination of respondent to deny petitioner General Municipal Law § 207-c benefits. Respondent moved to renew based upon a subsequent letter from Dr. Alan Tuckman, in which Dr. Tuckman specifically stated that he did not believe that petitioner’s illness was directly caused by his employment at the Rockland County Correctional Facility. The court granted renewal, vacated the March 1, 1995 order and set the matter down for a hearing.
On March 7, 1995 petitioner was denied General Municipal Law § 207-c benefits and placed on an involuntary leave of absence.
At the hearing held July 13, 1995, Dr. Tuckman testified that petitioner suffers from a significant personality disorder. Dr. Tuckman testified that petitioner related several incidents which have occurred at the "new jail”, and that petitioner had told him he did not have any problems in the "old jail”. Dr. Tuckman testified that petitioner told him that the new jail "is stifling and disturbing”, and that petitioner felt "enraged that prisoners have more rights than the jailers, correction officers. And he describes being more and more angry, and more and more furious, to the point that he would become explosive, angry, threatening, demanding, challenging, slamming his fist into a locker, et cetera”. Dr. Tuckman’s conclusion was that petitioner’s personality disorder was not "prodded by his work at the jail”, but was something that had developed over petitioner’s lifetime. Dr. Tuckman conceded, however, that "petitioner was having excessive reactions to the normal vicissitudes of employment, and of other situations in his life”, although petitioner’s marital relationship was excellent. Except for one or two isolated incidents, Dr. Tuckman could point to no other current situations in petitioner’s life which could have been the source of petitioner’s mental state. Dr. Tuckman *155 also conceded that some people with petitioner’s personality type could handle the stresses of being a correction officer, while others could not, and that petitioner was one of those who could not. On cross-examination Dr. Tuckman testified that "Somebody with poor impulse control, poor frustration tolerance, doesn’t walk around exploding all the time. They explode and get furious and act inappropriately at times when they are provoked. At times when they feel put upon, or intruded upon and treated unjustly”. When asked by petitioner’s counsel if "you had the sense he was angry at what was happening to him at work?” Dr. Tuckman responded, "Yeah. That’s what I’ve been saying all along”. In response to counsel’s inquiry as to whether he would agree that petitioner’s problems are exacerbated by his job experience, Dr. Tuckman stated, "Well, I believe —sure”.
Dr. Sobel testified that petitioner presented as "a man who was in serious stress”. Dr. Sobel opined that petitioner’s work situation was "triggering his potential loss of self-control.” Dr. Sobel testified that the November 17, 1994 letter to Chief Sol-faro was written because it was felt that a return to the work-site would "reexacerate” (sic) his "distressed mental state”. Dr. Sobel clearly stated that the disorder for which petitioner was treated, which was depression and progressive loss of impulse control, was certainly contributed to by the jail setting and, in his opinion, did not preexist petitioner’s working at the jail. It was Dr. Sobel’s opinion that petitioner’s condition may not have been caused by his employment, but was probably aggravated by it.
Petitioner has sustained his burden of proving a causal relationship between his illness and his employment. Both Dr. Tuckman and Dr. Sobel acknowledge that petitioner’s anger and loss of self-control are overt manifestations of an abnormal reaction to stress, and that the stress is, for the most part, produced at the workplace. While Dr. Tuckman and Dr. Sobel may disagree as to the date of onset of petitioner’s alleged personality disorder, both agree that the stress produced in the workplace has at least resulted in aggravation of plaintiff’s mental state. Respondent’s reliance on Matter of De Poalo v County of Schenectady (200 AD2d 277) is misplaced. That case concerned an employee with a history of heart disease whose physical symptoms merely appeared during the time he was at work. This case is remarkably different, in that petitioner, regardless of any predisposition to a personality disorder, was caused to and did suffer from a mental disorder directly caused *156 by events occurring in the workplace. The court has considered that petitioner was apparently able to fulfill the demands of his position, despite any alleged preexisting personality disorder, from 1988 to 1994, without any serious incident, and that prior to November 1994, petitioner had no history of any episodes or treatment for psychological problems.
While the court has failed to uncover any case on a similar set of facts under General Municipal Law § 207-c, cases decided under the Workers’ Compensation Law hold that where stress is produced on the job, stress-related anxiety disorders are considered to arise out of and in the course of employment, and the resultant disability is causally related thereto (see, e.g., In re Binghamton Psych Ctr., Workers’ Comp Bd case No. 99306519, 1995 WL 29241 [Jan. 19, 1995]; In re MDS Hudson Val. Labs, Workers’ Comp Bd case No. 5921 3327, 1995 WL 218559 [Mar. 31, 1995]; In re Delta Airlines, Workers’ Comp Bd case No. 09239322, 1995 WL 335712 [June 1, 1995).
Judgment for petitioner. Settle judgment on notice annulling the determination of respondents denying petitioner benefits pursuant to General Municipal Law § 207-c and directing respondent to classify petitioner’s disability as work related pursuant to General Municipal Law § 207-c, and to afford petitioner the rights and benefits accruing thereunder.